JUDGE SWAIN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

13 CIV 4492

MARIA ESTHER OYOLA, WAI HAN LAU, NGANCHEN L. MAR, LOVELL ROBINSON and ERIC LURVEY

Case No. ________

Plaintiffs,

vs.

GABRIELA CADENA LLC, GABRIELA CADENA FASHIONS, LLC, GABRIELA CADENA also known as GABRIELA MERCEDES CADENA VEDOVA, individually VIDAL ENRIQUE CADENA MARIN, individually, and JOHN DOES 1-10, and ABC CORPS. 1-10, fictitious names for persons or entities whose present roles and identities are unknown,

Defendants.

COMPLAINT

RECEIVED
JUN 28 2013
U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiffs, MARIA ESTHER OYOLA, WAI HAN LAU, NGANCHEN L. MAR, LOVELL ROBINSON and ERIC LURVEY, by and through their attorneys, Meyers Fried-Grodin, LLP, as and for a Complaint, state as follows:

## STATEMENT OF THE CASE

1. This is an action, by aggrieved individuals against their former employer, alleging violations of federal and state law, for: (i) failure to properly pay wages, including but not limited to a failure to pay overtime; and (ii) retaliation for having engaged in legally protected activity which included objecting to Defendants' wage and hour violations.

**THE PARTIES**

2. Plaintiff Maria Esther Oyola ("Plaintiff Oyola" or "Ms. Oyola") is an individual who resides in Forest Hills, New York, in the County of Queens.

3. Between on or about July 25, 2011 and March 13, 2013, Ms. Oyola was employed by Gabriela Cadena LLC and Gabriela Cadena Fashions, LLC (collectively, the "Cadena companies").

4. Ms. Oyola worked as a sample maker.

5. Plaintiff Wai Han Lau ("Plaintiff Lau" or "Ms. Lau") is an individual who resides in Staten Island, New York, in the County of Richmond.

6. Between on or about July 5, 2011 and March 12, 2013, Ms. Lau was employed by the Cadena companies.

7. Ms. Lau worked as a pattern maker and draper.

8. Plaintiff Nganchen L. Mar ("Plaintiff Mar" or "Ms. Mar") is an individual who resides in Elmhurst, New York, in the County of Queens.

9. Between July 1, 2012 until March 12, 2013, Ms. Mar was employed by the Cadena companies.

10. Ms. Mar worked as a pattern maker.

11. Plaintiff Lovell Robinson ("Plaintiff Robinson" or "Mr. Robinson") is an individual who resides in Laurelton, New York, in the County of Queens.

12. Between in or about June, 2011 and March 12, 2013, Mr. Robinson was employed by the Cadena companies.

13. Mr. Robinson worked as a cutter.

14. Plaintiff Eric Lurvey ("Plaintiff Lurvey" or "Mr. Lurvey") is an individual who resides in Brooklyn New York, in the County of Kings.

15. Between on or about May 5, 2011 and February 15, 2013, Mr. Lurvey was employed by the Cadena companies.

16. Mr. Lurvey's job title was Creative Director.

17. Upon information and belief, Gabriela Cadena LLC was and is a domestic business entity.

18. Upon information and belief, Gabriela Cadena LLC maintains a principal place of business at 39 West 38th Street # 4E, New York, NY 10018, in the County of New York.

19. Gabriela Cadena LLC is in the business of fashion design, production, manufacturing, packaging and distribution.

20. Upon information and belief, Gabriela Cadena Fashions, LLC was and is a domestic business entity.

21. Upon information and belief, Gabriela Cadena Fashions, LLC maintains a principal place of business at 39 West 38th Street # 4E, New York, NY 10018, in the County of New York.

22. Gabriela Cadena LLC is in the business of fashion design, production, manufacturing, packaging and distribution.

23. Upon information and belief, Defendant Gabriella Cadena a/k/a/ Gabriela Mercedes Cadena Vedova ("Ms. Cadena") is the founder and owner of the Cadena companies.

24. At all relevant times, Ms. Cadena exercised close control over the managerial operations of the Cadena companies, including policies and practices concerning employees, determining whether employees were exempt from overtime laws, wages, compensation, and payroll.

25. Upon information and belief, at all relevant times, Ms. Cadena has and does reside in the State of New York, in New York City, in Manhattan (New York County).

26. Upon information and belief, at all relevant times, Ms. Cadena controlled the terms and conditions of employment, supervised employees, made decisions as to hiring and firing, and as to determining the rate and method of the payment of wages with respect to Plaintiffs.

27. At all relevant times, Defendants were engaged in an industry having an effect on commerce within the meaning of 29 U.S.C. § 203.

28. Upon information and belief, at all relevant times, Ms. Cadena was a principal, officer owner, member, manager and/or director of the Cadena companies.

29. Upon information and belief, at all relevant times, Gabriela Cadena LLC and Gabriela Cadena Fashions, LLC were alter egos of one another.

30. Upon information and belief, at all relevant times, the Cadena companies were and are alter egos of Ms. Cadena.

31. Upon information and belief, Vidal Enrique Cadena Marin ("Mr. Marin") is Ms. Cadena's father.

32. Upon information and belief, Mr. Marin is a wealthy individual who has provided much of the capital for the Cadena companies.

33. Upon information and belief, at all relevant times, Mr. Marin was a principal, officer owner, member, manager and/or director of the Cadena companies, even if such position was not formally documented.

34. At all relevant times, Mr. Marin exercised close control over the managerial operations of the Cadena companies, including policies and practices concerning employees, determining whether employees were exempt from overtime laws, wages, compensation, and payroll.

35. Upon information and belief, at all relevant times, the Cadena companies were and are alter egos of Mr. Marin.

36. Upon information and belief, at all relevant times, Mr. Marin has and does reside in the State of New York, in New York City, in Manhattan (New York County).

37. Upon information and belief, at all relevant times, substantially all of the business operations of the Cadena companies were related activities performed through unified operation and/or common control by Ms. Cadena and Mr. Marin for a common business purpose.

38. At all relevant times, the Cadena companies were and are an enterprise engaged in commerce.

39. At all relevant times, all of the Plaintiffs regularly handled and worked on goods that were produced and were intended for shipment in interstate commerce and international commerce (and were in fact shipped in interstate commerce and international commerce).

40. Upon information and belief, for each of the calendar years of 2011 to 2013, inclusive, the gross receipts of the Cadena companies were not less than $500,000.

41. Upon information and belief, at all relevant times, the Cadena companies had more than twenty (20) employees.

42. At all relevant times, Defendants Ms. Cadena and Mr. Marin acted as the employer of Plaintiffs within the meaning of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL").

**JURISDICTION AND VENUE**

43. Jurisdiction is based on 28 U.S.C. § 1331, insofar as this action involves statutes of the United States, and specifically the FLSA, 29 U.S.C. §§ 201 *et. seq*.

44. Additionally, Plaintiffs rely upon 28 U.S.C. § 1367 to invoke supplemental jurisdiction with respect to state law claims that form other bases for recovery upon the same factual nexus, specifically the NYLL.

45. Moreover, this Court has the authority to issue declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

46. Venue is based on 28 U.S.C. § 1391(b)(1) insofar as at least one of the Defendants resides within this Judicial District, and (b)(2) insofar as a substantial part of the events giving rise to the within causes of action occurred in this Judicial District.

**FACTS COMMON TO ALL COUNTS**

47. Plaintiffs re-alleges and incorporates the allegations set forth in paragraphs 1 through 46, above.

**A. Defendants' Fashion Business**

48. Upon information and belief, Ms. Cadena comes from a wealth South American family.

49. Upon information and belief, Ms. Cadena was crowned Miss Ecuador in or about 2000.

50. Upon information and belief, the Cadena companies are in the business of fashion design, production, manufacturing, packaging and distribution including, among other things, for high-end retail establishments, celebrities, and well-known individuals.

51. Upon information and belief, Cadena garments are publicly worn by celebrities at high-profile events such as the Screen Actors Guild awards, Miss Universe events, and others, and Cadena garments are featured being worn by celebrities in popular publications such as People magazine and US Weekly.

52. Upon information and belief, the Cadena companies' business is very profitable.

**B. Defendants' Failure to Pay Plaintiffs Overtime (and Sometimes Anything at All)**

53. At all relevant times, Plaintiffs' work played a direct role in the operation of Cadena companies' fashion business – a business that provides products for clients in the State of New York, and across state borders by, *inter alia*: (i) transmitting its advertising media all across the world, via the internet; and (ii) sending, or causing to be sent, in inter-state commerce, garments for clients in multiple states in the United States.

54. Plaintiff Oyola did not perform work that is exempt from overtime or minimum wage requirements of state or federal law. Her duties did not entail the exercise of independent judgment or discretion.

55. Plaintiff Lau did not perform work that is exempt from overtime or minimum wage requirements of state or federal law. Her duties did not entail the exercise of independent judgment or discretion.

56. Plaintiff Mar did not perform work that is exempt from overtime or minimum wage requirements of state or federal law. Her duties did not entail the exercise of independent judgment or discretion.

57. Plaintiff Lurvey, despite his job title of "Creative Director," primarily performed duties that are not exempt from overtime or minimum wage requirements of state or federal law and his duties did not entail the exercise of independent judgment or discretion.

58. Plaintiffs were often required to work in excess of 40 hours per week.

59. There were weeks in which Plaintiffs were not paid an overtime premium of time and a half for work that they performed in excess of 40 hours per week.

60. There were weeks in which Plaintiffs were not paid the full amount owed to them for work they performed during those time periods.

61. There were weeks in which Plaintiffs were not paid anything at all.

62. Defendants did not furnish to Plaintiffs, annual written notices setting forth: (i) rate or rates of pay; (ii) how the employee is paid (*e.g.* by the hour, shift, day, week, commission, etc.); (iii) regular payday; (iv) the official name of the employer and any other names used for business; (v) address and phone number of the employer's main office or principal location; and (vi) allowances takes as part of the minimum wage, as required by the New York Wage Theft Prevention Act, Section 195 of the NYLL.

63. Moreover, Defendants did not furnish to Plaintiffs other notifications, in the form of postings or otherwise, regarding overtime and wages as required by the FLSA and NYLL.

64. Plaintiffs noticed that Defendants engaged in questionable wage and hour practices. For example, for 2012, some Plaintiffs were issued 1099 forms, instead of W-2 forms, even though Plaintiffs were employees. Moreover, one or more of the Plaintiffs' 1099 forms bore an incorrect social security number. The social security numbers problem was only corrected after one or more of the Plaintiffs complained about them. Additionally, one of the Plaintiffs did not receive a W-2 form or a 1099 form. Also, Mr. Robinson did not receive either a W-2 form or a 1099 form Defendants for 2011.

65. Additionally, there were instances in which Plaintiffs' pay was withheld for substantial periods of time.

**C. Defendants Retaliated Against Plaintiffs After They Objected to Wage & Hour Violations**

66. In or about December 21, 2012 Plaintiffs Oyala, Lau, Mar and Robinson lodged an internal complaint with Cadena's management about wage and hour violations, including but not limited to a failure to pay overtime and a failure to pay anything at all. Some of the Plaintiffs

said that they would walk out if they were not properly paid. This constituted legally-protected activity.

67. The relevant Plaintiffs anticipated retaliation. However, this was an especially busy time for the business, so it would be difficult for Cadena to immediately terminate them in response to their internal complaint. That is why it was a good time for Plaintiffs chose this time to lodge their complaint.

68. Ms. Cadena's response to the complaint was one of demonstrable irritation. Her voice was raised and she acted aggressively. She said that Plaintiffs Oyala, Lau, Mar and Robinson should be lucky to have jobs and be happy that Cadena keeps them employed.

69. A few weeks after Plaintiffs Oyala, Lau, Mar and Robinson lodged their internal complaint, they were fired on or about March 12, 2013.

70. The temporal proximity between Plaintiffs' complaint and their termination reflects a causal relationship. The temporal proximity between Plaintiffs' complaint and their termination also reflects the amount of time that it took for Defendants to plan and execute the hiring of replacements during that busy time.

71. Indeed, the amount of time between the internal complaint and the terminations was approximately the time needed for Cadena to replace Plaintiffs Oyala, Lau, Mar and Robinson.

72. Moreover, Defendants further retaliated against Plaintiffs Oyala, Lau, Mar and Robinson by, among other things, doing the following:

- encouraging the sales director to call the sewers "fucking lazy and worthless" to their faces;

- insisting that they eat lunch on the fire escape when Ms. Cadena was in the office; and

- threatening to fire them.

73. Plaintiff Lurvey supported Plaintiffs Oyala, Lau, Mar and Robinson for having engaged in legally protected activity and he objected to Defendants' wage & hour violations. For example, he on or about December 21, 2012, Plaintiff Lurvey told management, including Ms. Cadena, that employees whose wages were not paid, needed to be paid. This constituted legally protected activity.

74. Cadena was displeased with Mr. Lurvey's support of Plaintiffs Oyala's, Lau's, Mar's, and Robinson's protected activity and caused Defendants to retaliate against Mr. Lurvey. For example, Ms. Cadena:

- encouraged the sales director to call the sewers "fucking lazy and worthless" to their faces, which she knew would upset Mr. Lurvey in light of his support for them and told Mr. Lurvey not to stick up for "those fucking lazy people . . . you know who they are";

- set challenging deadlines for Mr. Lurvey to meet, but then refused to provide input necessary from Ms. Cadena, in order for Mr. Lurvey to be able to meet the deadlines;

- setting requirements for certain work, and then, shortly before it became due, changing her mind about it, thereby making it impossible for Mr. Lurvey to reasonably complete the task at hand;

- saying in front of others, that Mr. Lurvey can make no decisions on his own and can do nothing on his own, and emphasized that she made all the decisions;

- failing to pay Mr. Lurvey for work he performed; and

- using abusive language toward Mr. Lurvey.

75. In sum, Defendants deliberately made Plaintiff Lurvey's working conditions so intolerable that he was forced to resign, which he did on or about February 15, 2013.

**COUNT ONE**

**(Plaintiffs Oyala, Lau, Robinson and Lurvey -- FLSA Failure to Pay Minimum Wage and Failure to Pay Wages)**

76. Plaintiffs re-allege and incorporate the allegations set forth in paragraphs 1 through 75, above.

77. In violation of the FLSA, the Defendants failed to pay Plaintiffs Oyala, Lau, Mar and Lurvey anything at all for certain time periods.

78. In addition to Plaintiffs not receiving any payment at all, they also did not receive minimum wage.

79. The Defendants' violation of the aforementioned was intentional, knowing, willful, and in bad faith.

**COUNT TWO**

**(Plaintiffs Oyala, Lau, Robinson and Lurvey -- NYLL Failure to Pay Minimum Wage and Failure to Pay Wages)**

80. Plaintiffs re-allege and incorporate the allegations set forth in paragraphs 1 through 79, above.

81. In violation of the NYLL, the Defendants have failed to pay Plaintiffs Oyala, Lau, Mar and Lurvey anything at all for certain time periods.

82. In addition to Plaintiffs not receiving any payment at all, they also did not receive minimum wage.

83. The Defendants' violation of the aforementioned was intentional, knowing, willful, and in bad faith.

**COUNT THREE**

**(Plaintiffs Oyala, Lau, Robinson and Lurvey -- New York Unpaid Wages Prohibition Act)**

84. Plaintiffs re-allege and incorporate the allegations set forth in paragraphs 1 through 83, above.


85. In violation of the NYLL, the Defendants have failed to pay Plaintiffs Oyala, Lau, Mar and Lurvey any pay at all for certain time periods.

86. This represents a violation of NYLL § 196-a, the New York Unpaid Wages Prohibition Act.

87. The Defendants' violation of the aforementioned was intentional, knowing, willful, and in bad faith.

**COUNT FOUR**
**(All Plaintiffs -- New York Wage Theft Prevention Act)**

88. Plaintiffs re-allege and incorporate the allegations set forth in paragraphs 1 through 87, above.

89. Defendants failed to provide notices as required by the New York Wage Theft Prevention Act.

90. The Act provides for a private cause of action and remedy of money damages.

**COUNT FIVE**
**(Plaintiffs Oyala, Lau, Robinson and Lurvey -- FLSA Failure to Pay Overtime)**

91. Plaintiffs re-allege and incorporate the allegations set forth in paragraphs 1 through 90, above.

92. Defendants, in violated 29 U.S.C. §§ 207, 216(b) by failing to pay Plaintiffs Oyala, Lau, Mar and Lurvey overtime premium of one and a half times the regular pay for time that they worked in excess of 40 hours per week.

93. The Defendants' violation of the aforementioned was intentional, knowing, willful, and in bad faith.

94. All of the foregoing constituted willful and repeated violations, therefore the applicable statute of limitations is three (3) years, pursuant to 29 U.S.C. § 255(a).

**COUNT SIX**
**(Plaintiffs Oyala, Lau, Robinson and Lurvey -- NYLL Failure to Pay Overtime)**

95. Plaintiffs re-allege and incorporate the allegations set forth in paragraphs 1 through 94, above.

96. Defendants violated Articles 6 and 19 of the NYLL by failing to pay Plaintiffs Oyala, Lau, Mar and Lurvey overtime premium of one and a half times the regular pay for time that they worked in excess of 40 hours per week.

97. The Defendants' violation of the aforementioned was intentional, knowing, willful, and in bad faith.

98. All of the foregoing constituted willful and repeated violations.

**COUNT SEVEN**
**(Plaintiffs Oyala, Lau, Robinson and Lurvey -- NYLL Spread of Hours and Split-Shift Pay)**

99. Plaintiffs re-allege and incorporate the allegations set forth in paragraphs 1 through 98, above.

100. Defendants violated Articles 6 and 19 of the NYLL, and more particularly 12 NYCRR § 142-2.4 by failing to pay Plaintiffs Oyala, Lau, Mar and Lurvey one hour's pay at the prevailing minimum wage rate for each day during which there was a split shift and/or the spread of hours exceeding 10 hours.

101. The Defendants' violation of the aforementioned was intentional, knowing, willful, and in bad faith.

**COUNT EIGHT**
**(All Plaintiffs -- FLSA Retaliation)**

102. Plaintiffs re-allege and incorporate the allegations set forth in paragraphs 1 through 101, above.

103. Plaintiffs engaged in legally protected activity by lodging an internal complaint about wage and hour violations to Defendants.

104. Defendants knew about Plaintiffs legally protected activity and retaliated against Plaintiffs by, *inter alia*, terminating Plaintiffs Oyala, Lau, Mar and Lurvey and constructively terminating Plaintiff Lurvey.

105. Plaintiffs have been harmed as a result of Defendants' actions.

106. The Defendants' violation of the aforementioned was intentional, knowing, willful, and in bad faith.

**COUNT NINE**
**(All Plaintiffs -- Respondeat Superior)**

107. Plaintiffs re-allege and incorporate the allegations set forth in paragraphs 1 through 106, above.

108. Gabriela Cadena LLC, Gabriela Cadena Fashions, LLC are liable for any and all damages incurred as a result of the actions and/or omissions of Defendant Garbriele Cadena and/or other individuals who engaged in unlawful conduct pursuant to the doctrine of respondeat superior.

**COUNT TEN**
**(Individual Liability)**

109. Plaintiffs re-allege and incorporate the allegations set forth in paragraphs 1 through 108, above.

110. Due to, *inter alia*, the control, involvement, and ownership interests of Defendants Ms Cadena and Mr. Marin, they are individually liable for wage and hour violations under the FLSA and NYLL.

**COUNT FIVE**
**(Fictitious Party Allegations)**

111. Plaintiffs re-allege and incorporate the allegations set forth in paragraphs 1 through 110, above.

112. Defendants John Does 1-10 and ABC Corps 1-10 are fictitious individuals, corporations, partnerships, business entities, or anyone else who participated with the treatment, management, and supervision of Plaintiffs at all relevant times; and/or those with an ownership interest in Gabriela Cadena LLC and/or Gabriela Cadena Fashions, LLC, and/or who possessed the requisite position such as to be individually liable for violations of the wage and hour provisions of the FLSA and/or NYLL.

**PRAYER**

WHEREFORE, Plaintiffs demand judgment against the Defendants, jointly and severally, for the following:

a. compensatory damages including back-pay, front-pay, and emotional distress in an amount no less than $10,000,000;

b. pursuant to the FLSA's statutory and regulatory scheme, an award of unpaid wages, unpaid overtime pay, unpaid minimum wages, and an additional equal amount in liquidated damages;

c. an Order from this Court, pursuant to FLSA § 217, enjoining Defendants from further violating the FLSA;

d. an Order from this Court declaring that the Defendants' violation of the FLSA's minimum wage and overtime provisions was knowing and willful;

e. pursuant to the NYLL's statutory and regulatory scheme, an award of unpaid wages, unpaid minimum wages, overtime pay, liquidated damages, and spread of hours pay;

f. pursuant to the New York Unpaid Wages Prohibition Act, that this Court award liquidated damages in the amount of 200 percent of unpaid wages;

g. That damages be awarded pursuant to the New York Wage Theft Prevention Act;

h. an Order from this Court, pursuant to the NYLL, enjoining Defendants from further violating applicable State wage and hour laws;

i. pre-judgment and post-judgment interest;

j. attorneys' fees and costs;

k. punitive damages;

l. reinstatement; and

m. such other and further relief as the Court finds just and proper.

Respectfully submitted,

**MEYERS FRIED-GRODIN LLP**
Attorneys for Plaintiffs

By:________________________

Dated: June 28, 2013

Jonathan Meyers, Esq.
Empire State Building
350 Fifth Avenue, 59th Floor
New York, NY 10018
(646) 596-1292
JMeyers@MfgLegal.com

TO:

GABRIELA CADENA LLC
39 West 38th Street # 4E
New York, NY 10018

GABRIELA CADENA FASHIONS, LLC
39 West 38th Street # 4E
New York, NY 10018

GABRIELA CADENA also known as GABRIELA MERCEDES CADENA VEDOVA
2 River Terrace, Apartment 24d
New York, NY 10282

VIDAL ENRIQUE CADENA MARIN
2 River Terrace, Apartment 24d
New York, NY 10282

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARIA ESTHER OYOLA, WAI HAN LAU, NGANCHEN L. MAR, LOVELL ROBINSON and ERIC LURVEY

Plaintiffs,

vs.

GABRIELA CADENA LLC, GABRIELA CADENA FASHIONS, LLC, GABRIELA CADENA also known as GABRIELA MERCEDES CADENA VEDOVA, individually VIDAL ENRIQUE CADENA MARIN, individually, and JOHN DOES 1-10, and ABC CORPS. 1-10, fictitious names for persons or entities whose present roles and identities are unknown,

Defendants.

Case No. ________

**COMPLAINT**

**MEYERS FRIED-GRODIN LLP**
Attorneys for Plaintiffs
Empire State Building
350 Fifth Avenue, 59th Floor
New York, NY 10018
(646) 596-1292